UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES GARRETT, LEVI GARRETT,<br><br>Defendants. | 3:23-CV-03007-RAL<br><br>OPINION AND ORDER GRANTING UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT |

The United States in this case sued Defendants James Garrett and Levi Garrett (collectively "the Garretts") stating eight counts in the Complaint, seven under the False Claims Act and one for unjust enrichment. Doc. 1. The United States has filed a Motion for Partial Summary Judgment on Counts II, III, and IV. Doc. 34. Consistent with the District of South Dakota's Civil Local Rules, the United States filed a Statement of Undisputed Material Facts and Brief. Docs. 35, 36; see D.S.D. Civ. LR 56.1. This Court granted the Garretts extra time to respond to the motion for partial summary judgment cautioning the Garretts to be "mindful that pro se litigants are governed by the Federal Rules of Civil Procedure and the District of South Dakota's Civil Local Rules, including D.S.D. Civ. LR 56.1." Doc. 42 at 1-2. D.S.D. Civ. LR 56.1.B states that "[a] party opposing a motion for summary judgment must respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citation to the record." D.S.D. Civ. LR 56.1D in turn provides: "All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts." The United States'

1

Undisputed Material Facts, Doc. 35, are deemed admitted under D.S.D. LR Civ. 56.1.D and moreover are supported by matters of record in this case and the related concluded criminal case involving the same parties. Based on those facts and for the reasons explained herein, this Court grants the United States partial summary judgment.

## I.      Undisputed Material Facts

A federal grand jury issued an indictment charging Defendant James Garrett ("James") with four counts of False Statement in Connection with Federal Crop Insurance (Crop Years 2017 to 2020) and two counts of Major Fraud Against the United States, in violation of 18 U.S.C. §§ 1014 and 1031. United States v. Garrett, 3:21-cr-30091, (the "Criminal Case"). The same indictment charged Defendant Levi Garrett ("Levi") with one count of False Statement in Connection with Federal Crop Insurance (Crop Year 2018), in violation of 18 U.S.C. § 1014. Doc. 35 ¶ 1.

A federal grand jury subsequently issued a Superseding Indictment, which added an additional count of False Statement in Connection with Federal Crop Insurance (Crop Year 2016), in violation of 18 U.S.C. § 1014, against James and Levi. Doc. 35 ¶ 2. After a six-day trial, a jury found Defendant James Garrett guilty on two counts (Counts IV and VI) of False Statement in connection with Federal Crop Insurance and found Defendant Levi Garrett guilty of one count (Count V) of False Statement in connection with Federal Crop Insurance. Id. ¶¶ 3–12; Criminal Case Doc. 96 at 1.

Count IV of the Superseding Indictment alleged:

On or about the 6th day of July, 2018, in the District of South Dakota, the defendant, James Garrett, in a matter within the jurisdiction of the Risk Management Agency, an agency of the United States Department of Agriculture, did knowingly make a false statement and report for the purpose of influencing the action of the Federal Crop Insurance Corporation and a company that it reinsures, in connection with the payment of crop insurance benefits, to wit: James Garrett falsely certified that he

2

> planted 1,115.22 insured acres of sunflowers between the 10th day of June, 2018, and the 16th day of June, 2018, knowing that he in fact planted less than so declared, in violation of 18 U.S.C. § 1014.

Doc. 35 ¶ 4 (quoting Criminal Case Doc. 39). At the close of the evidence, this Court instructed

the jury as to Count IV by reading Jury Instruction No. 9:

> The crime of False Statement in Connection with Federal Crop Insurance, as charged in Count IV of the superseding indictment, has three elements, which are:

> One, that on or about the 6th day of July, 2018, the defendant, James Garrett, knowingly made a false statement that he planted 1,115.22 insured acres of sunflowers between the 10th day of June, 2018, and the 16th day of June, 2018, to Crop Risk Services.

> As used in this instruction, a statement is "false" if untrue when made.

> Two, that James Garrett made the false statement for the purpose of influencing the action of Crop Risk Services upon making a claim that the insured acres of sunflowers were lost when less than that amount of sunflowers were in fact planted.

> Three, that Crop Risk Services was re-insured by Federal Crop Insurance Corporation at the time the statement was made.

> If all of these elements have been proved beyond a reasonable doubt as to the defendant then you must find the defendant guilty of the crime charged; otherwise you must find him not guilty of this crime.

Doc. 35 ¶ 5 (quoting Criminal Case Doc. 94 at 10). The jury found James guilty on this Count.

Doc. 35 ¶ 6; Criminal Case Doc. 96 at 1.

> Count V of the superseding indictment alleged:

> On or about the 6th day of July, 2018, in the District of South Dakota, the defendant, Levi Garrett, in a matter within the jurisdiction of the Risk Management Agency, an agency of the United States Department of Agriculture, did knowingly make a false statement and report for the purpose of influencing the action of the Federal Crop Insurance Corporation and a company that it reinsures, in connection with the payment of crop insurance benefits, to wit: Levi Garrett falsely certified that he planted 1,122.79 insured acres of sunflowers between the 10th day of June, 2018, and the 16th day of June, 2018, knowing that he in fact planted less than so declared, in violation of 18 U.S.C. § 1014.

3

Doc. 35 ¶ 7 (quoting Criminal Case Doc. 39). At the close of evidence, the Court instructed the

jury as to Count V by reading Jury Instruction No. 10:

> The crime of False Statement in Connection with Federal Crop Insurance, as
> charged in Count V of the superseding indictment, has three elements, which are:
>
> One, that on or about the 6th day of July, 2018, the defendant, Levi Garrett
> knowingly made a false statement that he planted 1,122.79 insured acres of
> sunflowers between the 10th day of June, 2018, and the 16th day of June, 2018, to
> Crop Risk Services.
>
> As used in this instruction, a statement is "false" if untrue when made.
>
> Two, that Levi Garrett made the false statement for the purpose of influencing the
> action of Crop Risk Services upon making a claim that the insured acres of
> sunflowers were lost when less than that amount of sunflowers were in fact planted.
>
> Three, that Crop Risk Services was re-insured by Federal Crop Insurance
> Corporation at the time the statement was made.
>
> If all of these elements have been proved beyond a reasonable doubt as to the
> defendant, then you must find the defendant guilty of the crime charged; otherwise
> you must find him not guilty of this crime.

Doc. 35 ¶ 8 (quoting Criminal Case Doc. 94 at 11). The jury found Levi guilty as to Count V.

Doc. 35 ¶ 9; Criminal Case Doc. 96 at 1.

> Count VI of the superseding indictment alleged:
>
> On or about the 12th day of July, 2019, in the District of South Dakota, the
> defendant, James Garrett, in a matter within the jurisdiction of the Risk
> Management Agency, an agency of the United States Department of Agriculture,
> did knowingly make a false statement and report for the purpose of influencing the
> action of the Federal Crop Insurance Corporation and a company that it reinsures,
> in connection with the payment of crop insurance benefits, to wit: James Garrett
> falsely certified that he planted 47.5 insured acres of corn on the 17th day of June,
> 2019, knowing that he in fact planted less than so declared, in violation of 18 U.S.C.
> § 1014.

Doc. 35 ¶ 10 (quoting Criminal Case Doc. 39). At the close of evidence, the Court instructed the

jury as to Count VI by reading Jury Instruction No. 11:

> The crime of False Statement in Connection with Federal Crop Insurance, as charged in Count VI of the superseding indictment, has three elements, which are:
>
> One, that on or about the 12th day of July, 2019, the defendant, James Garrett, knowingly made a false statement that he planted 47.5 insured acres of corn the 17th day of June, 2019, to Crop Risk Services.
>
> As used in this instruction, a statement is "false" if untrue when made.
>
> Two, that James Garrett made the false statement for the purpose of influencing the action of Crop Risk Services upon making a claim that the insured acres of corn were lost when less than that amount of corn was in fact planted.
>
> Three, that Crop Risk Services was re-insured by Federal Crop Insurance Corporation at the time the statement was made.
>
> If all of these elements have been proved beyond a reasonable doubt as to the defendant, then you must find the defendant guilty of the crime charged; otherwise you must find him not guilty of this crime.

Doc. 35 ¶ 11 (quoting Criminal Case Doc. 94 at 12. The jury found James guilty of Count VI.

Doc. 35 ¶ 12; Criminal Case Doc. 96 at 1.

This Court sentenced James to 18 months in prison and assessed restitution in the amount of $1,045,544, and sentenced Levi to 24 months in prison and assessed restitution in the amount of $279,396. Doc. 35 ¶ 13; Criminal Case Docs. 142, 143. On restitution, this Court followed United States v. Torlai, 728 F.3d 932 (9th Cir. 2013) and held that the loss to the United States included not only the indemnity payments, but also the Administrative and Operating ("A&O") and premium subsidies. Doc. 35 ¶ 14; Criminal Case Doc. 172 at 38.

The Garretts appealed, challenging two evidentiary rulings. Doc. 35 ¶ 15. The Garretts did not appeal the Court's restitution judgment. Id. ¶ 16. The United States Court of Appeals for the Eighth Circuit affirmed in all respects. Id. ¶ 17; Criminal Case Doc. 175. Thereafter, the Financial Litigation Unit of the U.S. Attorney's Office undertook to enforce the restitution judgment. Doc. 35 ¶ 19. According to Clerk of Court's financial records, as of January 17, 2025—

when the motion for partial summary judgment was filed—James had paid just $46,125, and Levi had paid just $12,875, towards their respective federal criminal restitution. Id. at ¶ 20.

On May 17, 2023, the United States filed this action under the False Claims Act ("FCA"). Doc. 1. This FCA action alleges five counts of fraud against James (Counts I, II, IV, V, VI), one count of fraud against Levi (Count III), conspiracy against both Defendants (Count VII), and unjust enrichment against both (Count VIII). Count II of this FCA action alleges fraud related to the 2018 sunflower crop based on the same facts and transaction as James was found guilty of in Count IV of the criminal case. Doc. 1; Doc. 35 ¶ 22. Count III in this FCA action alleges fraud related to the 2018 sunflower crop based on the same facts and transaction as Levi was found guilty of in Count V of the criminal case. Doc. 1; Doc. 35 ¶ 23. Count IV in this FCA action alleges fraud related to the 2019 corn crop based on the same facts and transaction as James was found guilty of in Count VI of the criminal case. Doc. 1; Doc. 35 ¶ 24.

## II.    Discussion

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (citation omitted). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens

& Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

## B. False Claims Act and Civil Case Counts II, III and IV

The FCA prohibits knowingly presenting, or causing to be presented, to the federal government a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729 (a)(1). To prove a prima facie case, the United States must prove that "(1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." U.S. ex rel. Quirk v. Madonna Towers, Inc., 278 F.3d 765, 767 (8th Cir. 2002). A person acts "knowingly" under the FCA if they (1) have actual knowledge of the information, and either (2) act in deliberate ignorance of the truth or falsity of the information, or (3) act in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b)(1)(A). The United States must prove the elements of its FCA claims by a preponderance of the evidence. 31 U.S.C. § 3731(c). The FCA does not require the United States to prove that the defendant acted with specific intent to defraud the federal government. 31 U.S.C. § 3729(b)(1)(B).

Under 31 U.S.C. § 3731(e), "a final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo contendere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730." The Garretts are subjects of a final judgment in such a criminal case and thus are foreclosed, for all practical purposes, from defending themselves in an FCA action related to those convictions.

The Eighth Circuit case of <u>United States v. Aleff</u>, 772 F.3d 508, 510 (8th Cir. 2014) illustrates how § 3731(e) precludes a party convicted of a crime like the Garretts of avoiding judgment in a subsequent civil FCA case. In <u>Aleff</u>, the defendants pled guilty to conspiracy to defraud the United States by submitting false applications for loan-deficiency payments in violation of 18 U.S.C. § 286 and the court ordered defendants to pay $303,890 in restitution. <u>Id.</u> at 510. The United States then brought a civil action under the FCA, and the district court granted summary judgment and ordered defendants to pay $1,376,670. <u>Id.</u> Defendants appealed arguing that "(1) the district court erred in holding that their guilty pleas resolved their FCA liability; (2) the $1.3 million penalty violates the Double Jeopardy Clause; and (3) the $1.3 million penalty is grossly disproportional under the Excessive Fines Clause." <u>Id.</u> In affirming the district court's decision, the Eighth Circuit held the guilty plea did resolve the FCA claim, treble damages and penalty were not "punishment" and not violative of the Double Jeopardy Clause, and that although treble damages and penalties may be considered under the Excessive Fines Clause, it was not so in the case of <u>Aleff</u>. <u>Id.</u> at 510–12.

Here, in Counts II, III, and IV of this FCA action, the United States asserts claims against James and Levi under 31 U.S.C. § 3729(a)(1)(A)-(B) for making false claims for payment of federal crop insurance. James's false certification of his 2018 sunflower crop is the exact transaction that he was found guilty of in the criminal case, and which is now asserted in Count II of this FCA action. James is therefore estopped from denying the essential elements of Count II. Specifically, James is estopped from denying that he "knowingly presented, or caused to be presented, a false claim for payment of indemnities with respect to his 2018 sunflower crop." Count II of this FCA action further explains that James "knowingly made, used, or caused to be made or used false records in the form of the Acreage Report, Notice of Loss, and Production

Worksheet submitted in connection with his claim for payment of indemnities for his 2018 sunflower crop." Likewise, Count IV of this FCA action asserts that James "knowingly made, used, or caused to be made or used false records in the form of the Acreage Report, Notice of Loss, and Production Worksheet submitted in connection with his claim for payment of indemnities for his 2019 corn crop." This is the same scheme and transaction that James was found guilty of in the criminal case.

Count III of this FCA action asserts Levi "knowingly presented, or caused to be presented, a false claim for payment of indemnities with respect to his 2018 sunflower crop," and "knowingly made, used, or caused to be made or used false records in the form of the Acreage Report, Notice of Loss, and Production Worksheet submitted in connection with his claim for payment of indemnities for his 2018 sunflower crop." Again, this is the same scheme and transactions that Levi was found guilty of in the criminal case charging the same.

There is no dispute—not even by the Garretts—that the facts supporting the Garretts' convictions and guilty verdicts are the same facts in this FCA action. Notably, in one of the Garretts' most recent filings, they emphasize that "[t]his civil case contains many, if not all, of the same facts, claims, documents, and issues as contained in the criminal case." Doc. 30 at 10 (emphasis in original). Defendants' prior criminal judgments "estop [them] from denying the essential elements of the offense in" the instant case. 31 U.S.C. §3731(e).

### C. The Garretts' Arguments

The Garretts raise three arguments in their briefing. They do not contest the facts set forth above but argue that "there is a factual dispute as to whether the convictions of the criminal counts underlying the Government's partial summary judgment motion were based upon the improper interpretation, effect or application of agency regulations or rules." Doc. 43 ¶¶ 1, 7 (citing Loper

Bright Enters. v. Raimondo, 603 U.S. 369 (2024)).  In Loper Bright, the Supreme Court of the United States wiped away years of precedent under the so-called Chevron doctrine counseling judicial deference to federal agency interpretations of ambiguous statutory language relating to the agency's mission.  Id. at 412.  Loper Bright is inapposite here.  The Garretts have identified no ambiguity in application of the FCA, the application of the FCA to the Garretts does not turn on an understanding of statutory language adopted by a federal agency, and the terms of the FCA and particularly the estoppel provision at § 3731(e) are clear.  Moreover, the Garretts' argument that their federal criminal convictions somehow stem from some error of interpreting or applying federal law is foreclosed now that the Eighth Circuit has upheld their convictions and sentences and now that the criminal judgments are final.  Indeed, the Garretts did not appeal from how this Court defined the elements of the crimes on which they were convicted.  The Garretts cannot collaterally attack or seek to set aside or undermine their criminal convictions in this civil case.

Next, the Garretts argue that "the damages the Government seek[s] are overwhelmingly disproportionate in compensating the government for its loss" and thereby are "excessive fines and grossly disproportionate to the Defendants' convictions."  Doc. 43 ¶¶ 1, 9.  This argument is taken up in the section below.

Finally, the Garretts contend that "Defendants are entitled to complete discovery of these issues [referring to their first two arguments] because the discovery deadline in this matter is not until June 7, 2025 and Defendants' prior counsel withdrew from this matter abruptly."  Doc. 43 ¶ 1.  This Court extended additional time to the Garretts to respond to the motion for partial summary judgment under the circumstances, Doc. 42, and now is ruling on the motion for partial summary judgment after the discovery deadline has passed.  Regardless, the Garretts did not file an affidavit under Rule 56(d) of the Federal Rules of Civil Procedure to establish what facts they believed were

material but were unable to present due to discovery being ongoing. And as discussed above and elsewhere, the two other grounds the Garretts raise to avoid partial summary judgment are legal arguments not raising a viable defense to partial summary judgment.

### D. Amount of Judgment on Counts II, III and IV

The FCA entitles the United States to three times the amount of damages the United States sustained because of the fraudulent conduct. "The measure of the government's damages would be the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful." United States v. Coop. Grain & Supply Co., 476 F.2d 47, 62 (8th Cir. 1973) (quoting United States v. Woodbury, 359 F.2d 370, 379 (9th Cir. 1966)). Here, restitution, or single damages, has been established—$1,045,544 for James and $279,396 for Levi. Doc. 35 ¶¶ 13-14. The United States under § 3729(a) is entitled to three times those amounts as FCA damages, which is $3,136,632 for James and $838,188 for Levi.

In addition to treble damages, the Court is required to assess an additional civil penalty of not less than $5,000 and not more than $10,000, as adjusted for inflation and litigation costs. 31 U.S.C. § 3729(a). The current civil penalty, adjusted for inflation for violations occurring after November 2, 2015, is a minimum penalty of $13,946 and a maximum penalty of $27,894 for each false claim. See 28 C.F.R. § 85.5. Civil penalties under the FCA are determined by counting "[e]ach individual false claim or statement." United States ex rel. Schwedt v. Planning Rsch. Corp., 59 F.3d 196, 199 (D.C. Cir. 1995) (citing United States v. Bornstein, 423 U.S. 303, 313 (1976)). The Eighth Circuit has instructed district courts to consider a variety of factors when determining a constitutional and appropriately proportional penalty, including the reprehensibility of the defendant's conduct, the relationship between the penalty and the harm to the victim, the

11

sanctions in other cases for comparable misconduct, legislative intent, and the ability to pay. Aleff, 772 F.3d at 512.

The Garretts' scheme spanned the crop years 2018 and 2019, and they collectively received over $1.3 million in funds to which they were not entitled. Their conduct harmed the United States, in the form of both monetary damages and harm to the administration and integrity of government programs, namely the Risk Management Agency and U.S. Department of Agriculture. See Qwest Corp. v. Minn. Pub. Utils. Comm'n., 427 F.3d 1061, 1069 (acknowledging harm to state regulatory body and the state's competitive environment in holding penalty was not excessive). As a result, the United States had to bear the cost of investigating and prosecuting the fraud, including a six-day jury trial. But the Garretts caused only economic loss, as opposed to committing violent acts. See BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 576 (1996) (noting that harm that is purely economic is less reprehensible than violent crimes). The United States seeks a mid ($20,920) to low ($13,946) civil penalty for each false claim based on these factors.

The Garretts as mentioned above argue that civil damages of $3,136,632 against James and $838,188 against Levi are "excessive fines and grossly disproportionate to Defendants' criminal convictions, served incarceration and restitution," because they are "trebled and multiplied per claim." Doc. 43 ¶ 9. The Eighth Circuit has considered and rejected similar arguments in Aleff, where the court affirmed that treble damages and penalties were not "punishment" or violative of the Double Jeopardy Clause. Aleff, 772 F.3d at 510–12. Nor under the circumstances are the mandated trebling of damages under the FCA grossly disproportional to the gravity of the Garretts' convictions. See id. at 512. The Garretts' conduct as established by the facts during their criminal jury trial were conscious, reprehensible, flagrant and yet something they covered up, denied, and in at least Levi's case lied about repeatedly. The FCA amounts are not unrelated to the harm to

12

the United States and indeed involves statutory trebling of the restitution award under 31 U.S.C. § 3729(a), an award in a judgment affirmed on appeal. The FCA amounts serve the applicable legislative intent of protecting the public fisc and integrity of federal government programs, securing restitution to the government, and punishing and deterring those who seek to defraud the federal government. Thomas F. O'Neil III et. al., The Buck Stops Here: Preemption of Third-Party Claims by the False Claims Act, 12 J. Contemp. Health L. & Pol'y 41, 43 (1995).

This Court nonetheless will impose a civil penalty toward the low end of the spectrum of $15,000 per false claim. That results in James owing $3,136,632 plus $30,000 for a total of $3,166,632 and Levi owing $838,188 plus $15,000 for a total of $853,188 under the FCA based on Counts II, III, and IV.

**III.    Conclusion**

For the reasons explained herein, it is

ORDERED that the United States' Motion for Partial Summary Judgment on Counts II, III, and IV, Doc. 34, is granted and that summary judgment under Rule 56 of the Federal Rules of Civil Procedure and the False Claim Act enters on Counts II and IV in favor of the United States and against James Garrett for a total of $3,166,632 and on Count III in favor of the United States and against Levi Garrett for a total of $853,188.

DATED this 17th day of July, 2025.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE